UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11445DPW

ROBERT GRAY,
                      Plaintiff,

v.

TRANSPORTATION SECURITY
ADMINISTRATION, JAMES LOY IN HIS
CAPACITY AS SECRETARY OF THE
TRANSPORTATION SECURITY
ADMINISTRATION, DEPARTMENT OF
HOMELAND SECURITY, AND MICHAEL
CHERTOFF IN HIS CAPACITY AS SECRETARY OF
THE DEPARTMENT OF HOMELAND SECURITY

                      Defendant.

**MEMORANDUM IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

Plaintiff, Robert Gray ("Gray"), hereby submits this memorandum in support of his Motion For Preliminary Injunction ("Motion"). This case began when the Government denied Gray's request to obtain further training as a pilot without giving him any information to allow a genuine appeal of that decision. Within weeks of Gray's exercise of his fundamental constitutional right to petition this Court and the First Circuit to challenge this denial, he was subjected to dramatic retaliation with severe consequences. In particular, the Government placed Gray on its No-Fly List – a watch-list of suspected terrorists – as a result of which Gray has lost both his job and his ability to travel by air even as a passenger. The Government's retaliatory motive is evidenced by both (1) the temporal proximity between Gray's exercise of his right to

petition and the Government's decision to place him on the No-Fly List and (2) the Government's failure to put forth even an assertedly legitimate basis for its action. Moreover, the Government conducted at least four investigations concerning the issue of whether Gray is a threat to national security in the months prior to the date on which Gray filed suit; each time, the Government decided <u>not</u> to place Gray on the No-Fly List. The only relevant fact that has changed subsequent to these investigations – the most recent of which occurred just two months before Gray filed suit – is that Gray exercised his right under the Constitution to petition this Court.

For the reasons set forth more fully below and in the Affidavit of Robert William George Mulryne Gray ("Gray Aff."), filed herewith, Gray is squarely entitled to a preliminary injunction to protect him from the Government's unlawful retaliation.

I.  **STATEMENT OF FACTS**[1]

Gray is a permanent legal resident of the United States who holds a British passport and has lived in the United States since August 1993. Since 1997, Gray has worked as a pilot for a number of domestic airlines, flying small commercial aircraft in the United States. He has never engaged in or supported any terrorist or other illegal activity. Moreover -- and as TSA is aware -- Gray has never had any involvement whatsoever with the criminal justice system.[2]

On July 8, 2005, Gray filed a Verified Complaint in the above-captioned matter ("Complaint") and a related petition in the First Circuit, <u>Gray v. TSA</u>, Docket No. 05-2024 ("Petition"). On July 15, 2005, Gray served these pleadings by mail on Defendants (which

---

[1]   Unless otherwise stated, the facts set forth herein are derived from the Gray Aff.

[2]   More specifically, TSA received a document from the Federal Bureau of Investigation on or about April 28, 2004 stating that Gray has never been arrested. <u>See</u> Gray Aff. Ex. A.

2

consist of large Departments of the Executive Branch and the Secretaries of said Departments, sued in their official capacities). Both the Complaint and the Petition challenge the decision by Defendant Transportation Security Administration ("TSA") to deny Gray authorization to obtain training to fly larger aircraft – and, correlatively, to accept any position in the field of his choice – based upon (a) unspecified allegations from unidentified sources and (b) secret evidence that TSA has refused to disclose or even describe.

Upon information and belief, Gray has never appeared on any Government watch-list of suspected terrorists prior to the date on which he filed the Complaint and the Petition. It bears emphasis that TSA maintains two such lists. Individuals on the Selectee List are subjected to certain forms of screening before they are permitted to fly. Individuals on the No-Fly List are absolutely barred from flying a plane as a pilot, boarding any aircraft as a passenger or entering certain areas of airports. In short, the No-Fly List identifies individuals whom TSA regards as more dangerous to national security than the individuals identified on the Selectee List.

As set forth more fully below and in the Gray Aff., TSA conducted in the months prior to the date on which Gray filed the Complaint and the Petition at least four investigations concerning the issue of whether Gray is a threat to national security.[3] For example, TSA confirmed to Gray's employer on May 2, 2005 – i.e., just two months before Gray filed the Complaint and the Petition – that (a) the "Robert Gray" whose name was included on the Selectee List on that date was not Gray and (b) that Gray was clear to continue to fly as a pilot. See Gray Aff. Ex. B. At no point during any of these investigations did TSA divulge any

---

[3] TSA concluded the investigations of which Gray is aware on December 16, 2004 (see Am. Cmplt. Ex. B), January 27, 2005 (see Am. Cmplt. Ex. C), May 2, 2005 (see Gray Aff. Ex. B) and May 11, 2005 (see Am. Cmplt. Ex. J). As stated previously, Gray filed the Complaint and the Petition on July 8, 2005 and served these pleadings by mail on July 15, 2005.

3

information tending to suggest the presence of any reason to suspect that Gray is a threat to national security. At the conclusion of each of these investigations, TSA decided not to put Gray on either the Selectee List or the No-Fly List.

On or about September 6, 2005 – i.e., just seven weeks after Gray served the Complaint and before any Defendant filed a responsive pleading[4] – TSA decided to place Gray on the No-Fly List. Aside from the fact that Gray has filed suit against the Government, Gray is unaware of any relevant fact that has changed subsequent to TSA's four recent decisions not to place him on either the Selectee List or the No-Fly List. TSA has neither identified such a fact nor otherwise offered a non-retaliatory explanation for its action.

As discussed more fully below, TSA's placement of Gray's name on the No-Fly List has had dramatic consequences in nearly every aspect of Gray's life. In broad strokes, Gray is barred from pursuing his career in his chosen field, substantially limited in pursuing a career in any other field and prevented from both taking his honeymoon in Europe (as he and his fiancée had planned to do next month) and visiting his ailing mother in Ireland in the likely event of a medical emergency in the near term future.

II. **ARGUMENT**

Under the well-settled analytic framework set forth most recently in Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005), Gray is squarely entitled to injunctive relief. In the remainder of this Memorandum, each of the elements of this framework is analyzed in turn.

---

[4] As of the date of filing, no Defendant has filed a responsive pleading. Nor has TSA, the sole Respondent in the action pending in the First Circuit, filed a pleading responsive to the Petition.

4

**A. Gray Is Likely To Prevail On The Merits**[5]

Retaliation

In order to prevail on his claim of retaliation, Gray must show "'that his conduct was constitutionally protected and that this conduct was a 'substantial factor' or . . . a 'motivating factor' for [Defendants'] retaliatory decision.'" Powell v. Alexander, 391 F.3d 1, 17 (1st Cir. 2004) (ellipses in original; quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 [1977]).

Gray's right to file the Complaint and the Petition is, of course, specifically and expressly protected by the Constitution. See U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right . . . to petition the Government for a redress of grievances"). As the First Circuit has emphasized, "For decades, the Supreme Court has consistently recognized the right to petition all branches of the government, including the courts, for redress of grievances as among the most precious of the liberties safeguarded by the Bill of Rights." Powell, 391 F.3d at 16 (internal citation and quotation marks omitted); see also, e.g., ACLU of Md., Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993); NLRB v. Local 30, 939 F.2d 118, 126 (3d Cir. 1991).

Based upon the record before this Court, it is exceedingly likely that Gray will be able to establish that the filing of the Complaint and the Petition was, at a bare minimum, a "substantial" or "motivating" factor in Defendants' retaliatory decision to place him on the No-Fly List. Powell, 391 F.3d at 17.

TSA has conducted at least four investigations concerning Gray in the months prior to the date on which he filed the Complaint and the Petition. Although all of these investigations

---

[5] For purposes of the instant Motion, Gray will limit his analysis to TSA's recent decision to place him on the No-Fly List.

5

concerned the issue of whether Gray is a threat to national security, TSA decided at the conclusion of each of these investigations not to place Gray on either the Selectee List or the No-Fly List. On December 16, 2004, TSA declined to either process Gray's application for authorization to obtain training on larger aircraft or approve his request for training. See Am. Cmplt. Ex. B. TSA did not place Gray on either the Selectee List or the No-Fly List in the wake of this decision. On January 27, 2005, TSA formally denied Gray's training request. See Am. Cmplt. Ex. C. TSA did not place Gray on either the Selectee List or the No-Fly List in the wake of this decision. On May 2, 2005, TSA confirmed to Gray's employer (a) that the "Robert Gray" listed on the Selectee List was not Gray and (b) that Gray was clear to continue to fly as a pilot. See Gray Aff. Ex. A. TSA did not place Gray on either the Selectee List or the No-Fly List in the wake of this confirmation. On May 11, 2005, TSA affirmed its denial of Gray's training request. See Am. Cmplt. Ex. J. TSA did not place Gray on either the Selectee List or the No-Fly List in the wake of this decision. At no point during any of these investigations did TSA divulge any information tending to suggest the presence of any legitimate reason for placing Gray on either the Selectee List or the No-Fly List.

Gray served the Complaint and the Petition in the latter half of July 2005. Seven weeks later, TSA placed him on the No-Fly List – a step that TSA decided not to take in the wake of at least four recent investigations that predated Gray's exercise of his rights under the First Amendment. Standing alone, these facts strongly suggest that Gray's constitutionally protected conduct was, at a bare minimum, a "substantial" or "motivating" factor in Defendants' decision to place him on the No-Fly List. Powell, 391 F.3d at 17.

Moreover, it is well-settled that the close proximity in time between Gray's exercise of his constitutional rights and TSA's retaliatory action is itself significant. See, e.g., Quinn v.

Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998) (prima facie case of causal connection supporting retaliation claim where plaintiff was discharged less than two months after filing internal complaint); accord Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988) ("Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

Defendants have not even articulated a non-retaliatory reason for placing Gray on the No-Fly List, let alone come forward with any evidence to demonstrate any support for such a hypothetical reason. Based upon the record before this Court, it is therefore exceedingly unlikely that Defendants will be able to satisfy their burden of establishing that they "would have reached the same decision . . . even in the absence of the protected conduct." Powell, 391 F.3d at 17 (internal quotation marks omitted).

In the analogous context of retaliation by an employer, in order to avoid liability following proof of protected conduct and an adverse action suffered by the plaintiff, the defendant "'must clearly set forth, through the introduction of admissible evidence, the reasons for the [employee's termination]. The explanation provided must be legally sufficient to justify a judgment for the [employer].'" Hodgens v. General Dynamics Corp., 144 F.3d 151, 160-161 (1st Cir. 1998) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 [1981]). Nothing in the record before this Court suggests that TSA can even begin to satisfy this burden.

In a striking admission that it had no legitimate reason to place Gray on the No-Fly List, TSA confirmed to Gray's employer on May 2, 2005 – i.e., just two months before Gray filed the Complaint and the Petition – that (a) the "Robert Gray" whose name was included on the Selectee List on that date was not Gray and (b) that Gray was clear to continue to fly as a pilot.

See Gray Aff. Ex. B. In other words, TSA decided very shortly before Gray filed suit not to place Gray on the Selectee List (i.e., the list of less dangerous individuals), then decided very shortly after Gray filed suit to take the dramatically more serious step of placing Gray on the No-Fly List (i.e., the list of more dangerous individuals). Because TSA has not come forward with a non-retaliatory explanation for this abrupt about-face, Gray is likely to prevail on the merits of his retaliation claim.

Due Process

In order to prevail on his due process claim, Gray must show that he was "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It has long been a matter of black letter law that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." Greene v. McElroy, 360 U.S. 474, 492 (1959) (collecting cases); see also Kartseva v. Dept. of State, 37 F.3d 1524, 1528 (D.C. Cir. 1994). Because TSA placed Gray on the No-Fly List without any process at all, Gray is at least likely to prevail on the merits of his due process claim.

B.  **Absent Injunctive Relief, Gray Will Suffer Irreparable Harm**

Absent an injunction, Gray will suffer irreparable harm in every aspect of his life. None of these harms can be remedied with money damages awarded after the conclusion of litigation. To begin with, if allowed to stand, TSA's decision to place Gray on the No-Fly List will end Gray's career as a pilot. Accordingly, he would be unable to hold any position that draws upon

his substantial training and experience as a pilot. Moreover, Gray's reputation and standing within the airline industry will be substantially and irrevocably diminished.

With respect to positions outside the airline industry, Gray does not have any other professional or vocational training. Even if he did have any other training, it is difficult to imagine an employer who would hire a person whom the Government has placed on a watch-list of suspected terrorists. For these reasons, it is unclear whether or how Gray will be able to even make ends meet, let alone earn an income commensurate with what he earned before TSA placed him on the No-Fly List.

In addition, TSA's decision to place Gray on the No-Fly List precludes him from boarding any plane, which will have devastating consequences on several aspects of Gray's family life. Perhaps most significantly, his mother, who lives in Ireland, has been in continuous ill health for approximately five years. More than once in the past few years she has been hospitalized in an intensive care unit and has been on the brink of death. On those occasions, Gray has been required to fly to Ireland on extremely short notice. Unless Gray's name is removed from the No-Fly List, there is a very real possibility that he will be unable to visit his mother on her deathbed.

In addition, if Gray is unable to board a plane on October 25, 2005, he will be forced to cancel his honeymoon, which he and his fiancée were planning to spend in Europe. Finally, if the TSA's action is not promptly remedied, Gray's reputation and standing within his community will be substantially diminished by the fact that the Government has placed him on a watch-list of suspected terrorists.

C.  **The Balance Of Relevant Impositions Tips Decisively In Favor Of Gray**

As set forth supra, Gray will suffer a wide array of irreparable harms absent injunctive relief. As of the date of filing, TSA has not come forward with a shred of evidence tending to suggest the presence of any legitimate reason for placing Gray on the No-Fly List. Significantly, TSA itself has effectively admitted that there is no legitimate reason to place Gray on the No-Fly List by (a) assuring Gray's employer just a few months ago that Gray was not on even the Selectee List and (b) declining to place Gray on either the Selectee List or the No-Fly List based upon the information concerning Gray that TSA reviewed during the course of the four investigations discussed supra.

D.  **The Public Has A Strong Interest In The Requested Injunction**

As discussed more fully above, Defendants have not come forward with a shred of evidence tending to suggest the presence of any legitimate reason for placing Gray on the No-Fly List and, in fact, have effectively admitted that there is no such reason. Accordingly, the record before this Court is devoid of any public interest to be derived from inflicting a broad array of irreparable harms on Gray.

Meanwhile, the public has a direct stake in (a) holding the Government in general and TSA in particular accountable for its actions, (b) ensuring strict compliance with constitutional protections and (c) ensuring that the Government cannot devastate a citizen's life on the basis of secret evidence. See, e.g., Goss v. Lopez, 419 U.S. 565, 580 (1975) ("Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness." [Internal quotation marks omitted.]).

In addition, the public interest is served by enforcing the fundamental principle that a constitutional right such as the First Amendment right to petition the Government is of limited value if one cannot exercise that right without being subjected to devastating retaliation. See, e.g., Jackson v. Birmingham Bd. Of Ed., 125 S.Ct. 1497, 1508 (2005) ("Without protection from retaliation, individuals who witness discrimination would likely not report it . . . and the underlying discrimination would go unremedied."). Finally, the public interest requires that Gray and others like him be protected from unlawful retaliation during the pendency of their claims that the Government violated their rights under the Constitution. See, e.g., id. (prevention of unlawful practices would be "difficult if not impossible to achieve if persons who complain . . . did not have effective protection against retaliation").

### III.   CONCLUSION

For the reasons set forth more fully above, Gray is entitled to a preliminary injunction.

WHEREFORE, Gray respectfully requests that this Court enter a preliminary injunction and grant such other and further relief as is just.

                        Respectfully submitted,

                        ROBERT GRAY,

                        By his attorneys,

                        _____
                        Paul Holtzman, Esq.
                        BBO No. 563184
                        Hugh Dun Rappaport, Esq.
                        BBO No. 642263
                        KROKIDAS & BLUESTEIN LLP
                        600 Atlantic Avenue
                        Boston, MA  02210
                        (617) 482-7211


                        _____/HDR
                        Sarah R. Wunsch, Esq.
                        BBO No. 548767
                        ACLU OF MASSACHUSETTS
                        211 Congress Street
                        Boston, MA  02110
                        (617) 482-3170

DATED:  September 16, 2005


I hereby certify that a true copy of the above document was served upon James Loy, the Transportation Security Administration, Michael Chertoff, the U.S. Department of Homeland Security, the Attorney General of the United States and the Office of the United States Attorney by next day mail on September 16, 2005.

                                                _____
                                                Hugh Dun Rappaport

2192\0001\155492.4