UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11445DPW

FILED
Clerk's Office
USDC, Mass.
Date 9/21/05
By [signature]
Deputy Clerk

ROBERT GRAY,

      Plaintiff,

v.

TRANSPORTATION SECURITY
ADMINISTRATION, JAMES LOY IN HIS
CAPACITY AS SECRETARY OF THE
TRANSPORTATION SECURITY
ADMINISTRATION, DEPARTMENT OF
HOMELAND SECURITY, AND MICHAEL
CHERTOFF IN HIS CAPACITY AS SECRETARY OF
THE DEPARTMENT OF HOMELAND SECURITY

      Defendant.

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Robert Gray ("Gray"), hereby replies to Defendants' Opposition To Plaintiff's Motion For A Preliminary Injunction ("Opposition" to "Motion").[1]

**I. The Sole "No-Fly List" Case Cited By Defendants Squarely Holds That District Courts Possess Jurisdiction Over A Due Process Claim Such As The One Asserted By Gray And Strongly Suggests That Gray Has Established A Likelihood Of Success On The Merits Of His Due Process Claim**

Defendants' argument that Gray's Due Process claim challenges an "order" within the meaning of 49 U.S.C. § 46110 ("Section 46110") relies heavily upon Green v. TSA, 351 F.Supp.2d 119 (W.D. Wash. 2005), which Defendants cite no fewer than four times in the two paragraphs of the Opposition concerning this issue. Opposition at 11-12. As Defendants

---

[1] Because Gray received the Opposition only a few hours prior to the hearing on the Motion, Gray reserves the right to supplement the instant Reply.

acknowledge, Green is the only case in which any court in any jurisdiction has considered this issue in the context of a claim such as Gray's. Opposition at 11. What Defendants have failed to call to the attention of this Court is the fact that Green squarely holds that the clearance procedures ("Clearance Procedures") attached to the Opposition as Exhibit B[2] "do not constitute 'orders' for the purposes of § 46110."[3] As a result, the Court held that it did have "jurisdiction to consider Plaintiff's Fifth Amendment Due Process claims relative to these procedures." Green, 351 F.Supp.2d at 1128. This holding is unquestionably correct.[4]

Because the Clearance Procedures are not "orders" within the meaning of Section 46110 -- as expressly recognized by the principal authority upon which Defendants rely -- that statute does not stand in the way of this Court's ability to adjudicate Gray's Due Process claim.[5]

Turning to the merits, Defendants also have failed to call to the attention of this Court the fact that Green strongly suggests that Gray has a likelihood of success on the merits of his Due Process claim.[6] More specifically, Green explains that a litigant such as Gray will prevail if she can establish both (1) public disclosure of a stigmatizing statement by the Government and (2)

---

[2] Exhibit B to the Opposition is the exact same document that was before the Green court. (The second sequence of information appearing in the top margin of the document is the docket number for Green.)

[3] The portion of Green cited by Defendants stands for the proposition that "'[T]o the extent these Security Directives establish a No-Fly List . . . this Court has no subject matter jurisdiction.'" Opposition at 11-12 (quoting Green; emphasis added). Because Gray does not challenge the "establish[ment of] a No-Fly List," this aspect of Green has nothing to do with this case.

[4] As the Green Court emphasized, the Clearance Procedures merely "established a voluntary procedure whereby individuals may attempt to expedite future check-in procedures." Green, 351 F.Supp.2d at 1128. Moreover, the Clearance Procedures do not satisfy the facial criteria for "orders" set forth in Section 46110 because they apparently were not issued by any of the individuals enumerated in the statute.

[5] See also Bell v. Hood, 327 U.S. 678, 684 (1946), and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 400 (Harlan, J., concurring) (1971), discussed infra.

[6] Defendants do not -- and cannot -- dispute Gray's statement in his moving papers that "It has long been a matter of black letter law that 'the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" and "property" concepts of the Fifth Amendment.' Greene v. McElroy, 360 U.S. 474, 492 (1959) (collecting cases); see also Kartseva v. Dept. of State, 37 F.3d 1524, 1528 (D.C. Cir. 1994)." Mem. In Support Of Mot. at 8.

the denial of a tangible interest. Green, 351 F.Supp.2d at 1129. Green holds that association with the No-Fly List easily satisfies the first element of this test. Id. ("[T]here can be little doubt that association with a government terrorist watch-list might seriously damage [Plaintiffs'] standing and associations in [their] community." [Internal quotation marks omitted.]) With respect to the second element of this test, Green specifically identifies denial of employment as the paradigmatic example of the requisite tangible interest. Id. at 1129 & 1130. Because Gray – unlike the plaintiff's in Green – has suffered irreparable harm to his present and future employment, he easily satisfies the second element of this test as well.

Finally, it bears emphasis that the Government did not inform Gray of the Clearance Procedures until he filed the instant Motion[7] and that – contrary to Defendants' representations to this Court – TSA clearly admits on its website that the Clearance Procedures "will not remove a name" such as Gray's from the No-Fly List.[8] This is particularly the case where Gray's contention is not that his name was added as the result of mistaken identity – but rather that it was added in retaliation for his exercise of his First Amendment right to petition. The Clearance Procedures – focused as they are on a Passenger Identity Verification Form – simply do not address a claim such as Gray's. Accordingly, the Clearance Procedures upon which Defendants rely constitute patently inadequate process in the context of this case.

---

[7] For this reason, Defendants' statement that Gray "has made no effort to avail himself of" the Clearance Procedures is, to say the least, disingenuous. Opposition at 18.

[8] Defendants have represented to this Court that the Clearance Procedures "afford individuals the opportunity to contest their placement on [the No-Fly List] . . . or to establish that their placement on the No-Fly List was a result of a mistaken identity." Opposition at 18 (emphasis added). According to TSA's website, however, the Clearance Procedures "will not remove a name from" the No-Fly List. See TSA Watch Lists Clearance Procedures, available at http://www.tsa.gov/public/display?theme=157&content=09000519800fb8af (visited Sept. 21, 2005). For the Court's convenience, a true and accurate copy of this document is attached hereto as Exhibit A. Instead, the Clearance Procedures simply "distinguish[] passengers [with similar names] from persons who are in fact on the" No-Fly List. Id. It follows that the Clearance Procedures do not apply to a person such as Gray, whose identifying information the Government accurately but improperly placed on the No-Fly List to retaliate against him for exercising his right under the First Amendment to petition this Court.

For these reasons, Gray is likely to prevail on the merits of his Due Process claim.

## II. This Court Has Jurisdiction Over Gray's First Amendment Claim, With Respect To Which The Record Before This Court Compels The Conclusion That Gray Is Likely To Prevail On The Merits

The gravamen of Gray's retaliation claim is that Defendants placed his name on the No-Fly List to punish him for exercising his right under the First Amendment to petition this Court. This Court recently stated that it was unaware of any cases where a claim "alleging . . . retaliation for the exercise of First Amendment rights has been precluded by § 46110." Capozzi v. Department of Transp., 135 F.Supp.2d 87, 95 (D. Mass. 2001). There is good reason for this silence. In fact, Section 46110 does not preclude Gray's First Amendment claim for each of four independently-sufficient reasons.[9]

First, Defendants' decision to retaliate against Gray for exercising his rights under the Constitution is not a legitimate "order" entitled to protection under Section 46111.

Second, the decision to place Gray's name on the No-Fly List does not satisfy the facial criteria for "orders" set forth in Section 46110 because it does not appear to have been made by any of the individuals enumerated in the statute.

Third, the No-Fly List is a fluid and constantly-changing aggregation of data into which information apparently is automatically "export[ed]" by a computer. Longmire Decl. ¶ 9. The automated "export[ing]" of a name from one database into another database by a computer is not even a decision, let alone an "order" within the meaning of Section 46110.[10]

---

[9] In any event, this Court enjoys independent jurisdiction to enjoin unconstitutional conduct by federal officials. Bell v. Hood, 327 U.S. 678, 684 (1946) ("it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 400 (Harlan, J., concurring) (1971) (in cases of unconstitutional conduct by federal officials, "presumed availability of federal equitable relief, if a proper showing can be made in terms of the ordinary principles governing equitable remedies").

[10] It bears emphasis that Defendants are unwilling to confirm that Gray's name appears on the No-Fly List, let alone address the process by which his name was placed there.

Fourth, even if the decision to place Gray's name on the No-Fly List were an "order," this Court nevertheless possesses jurisdiction because the core issue raised by Gray's First Amendment claim – i.e., whether Gray's protected activity was a 'substantial factor' or . . . a 'motivating factor'" for Defendants' decision[11] – is not "inescapably intertwined" with the issue of whether that decision is supported by substantial evidence. See Green, 351 F.Supp.2d at 1125-26 (district courts possess jurisdiction to review broad constitutional challenges that are not "inescapably intertwined" with merits of agency actions "notwithstanding the fact that [said actions] constitute orders within the meaning of § 46110"). More specifically, Gray's First Amendment claim raises the following issues, none of which has any bearing on the kind of challenge contemplated by Section 46110:

(1) The chronology of events leading to the placement of Gray's name on the No-Fly List;

(2) The differences between the way in which Defendants treated Gray and the way in which they have treated other individuals prior to placing their names on the No-Fly List;

(3) Whether Defendants have placed other individuals' names on the No-Fly List to retaliate against them for exercising their rights under the Constitution;

(4) The reasons why Defendants did not place Gray's name on the No-Fly List prior to the date on which he exercised his right under the First Amendment to petition this Court;

(5) The "motivating factors" underlying Defendants' decision and

(6) The credibility of the pertinent decision-makers.[12]

---

[11] Powell v. Alexander, 391 F.3d 1, 17 (1st Cir. 2004) (ellipses in original; quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 [1977]).

[12] Although Defendants contend that Gray's First Amendment claim "would necessarily be inextricably intertwined with an adjudication of the procedures and merits of any Security Directives or Emergency Amendments," the Opposition does not contain a single word of argument in support of this naked assertion. Opposition at 12.

Turning to the merits, Gray stated in his moving papers that Defendants have failed "to put forth even an assertedly legitimate basis" for placing Gray's name on the No-Fly List. Memo. In Support Of Mot. at 2. Nothing in the Opposition purports to remedy this failure. More specifically, nothing in the Longmire Declaration or the Opposition either (1) claims that Defendants had any legitimate reason for placing Gray's name on the No-Fly List or (2) provides any hint as to what that hypothetically legitimate reason might have been.[13] Accordingly, nothing in the record before this Court suggests that Defendants will be able to satisfy their burden of establishing that they "would have reached the same decision . . . even in the absence of the protected conduct." Powell v. Alexander, 391 F.3d 1, 17 (1st Cir. 2004) (internal quotation marks omitted).

Defendants claim that placing Gray's name on the No-Fly List is "consistent with agency determinations made well prior to the filing of the lawsuit." Opposition at 14. This claim is obviously and demonstrably false. As set forth more fully in Gray's moving papers, Defendants conducted at least four investigations concerning the issue of whether Gray is a threat to national security in the months prior to the date on which Gray filed suit; each time, Defendants decided not to place Gray on the No-Fly List.[14] It is well settled in this Circuit that this kind of striking

---

[13] For this reason, there is no meat on the bone of Defendants' claim that equitable factors weigh against granting the Motion. Opposition at 18-19.

[14] Defendants' claim that TSA "does not have authority to designate individuals for inclusion on the No-Fly List"; Opposition at 15; is contradicted by the Declaration that TSA filed in the Green case, in which Lee S. Longmire -- the same affiant upon whom Defendants rely in this case -- stated that TSA periodically "revises . . . the specific individuals identified on" the No-Fly List. See June 6, 2004 Decl. Of Lee S. Longmire ¶ 8. A true and accurate copy of this document is attached hereto as Exhibit B. Significantly, nothing in the Declaration of Longmire filed in the above-captioned matter supports Defendants' claim that TSA lacks authority to place individuals on the No-Fly List.
   In the unlikely event that Defendants -- which include both the Department of Homeland Security and its Secretary -- did lack authority to place individuals on the No-Fly List, the proper response would not be to deny the instant Motion. Rather, the proper response would be to allow the instant Motion and order the joinder of all necessary parties for purposes of any remaining proceedings.

inconsistency constitutes compelling evidence of retaliation.[15] See, e.g., Hodgens v. General Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998) (in establishing pretext in retaliation case, "one way an employee may succeed is to show 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence'").

For these reasons, Gray is likely to prevail on the merits of his First Amendment claim.

## Conclusion

For the reasons stated herein and in the Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, it is respectfully requested that the requested injunction issue.

Respectfully submitted,

ROBERT GRAY,
By his attorneys,

_____
Paul Holtzman, Esq.
BBO No. 563184
Hugh Dun Rappaport, Esq.
BBO No. 642263
KROKIDAS & BLUESTEIN LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 482-7211

_____
Sarah R. Wunsch, Esq.
BBO No. 548767
ACLU OF MASSACHUSETTS
211 Congress Street
Boston, MA 02110
(617) 482-3170

DATED: September 21, 2005

---

[15] Strikingly, Defendants' claim that "TSA had determined that [Gray] poses a threat to aviation or national security well prior to the filing of this lawsuit"; Opposition at 14; gives rise to a different inconsistency: if Defendants believed pre-filing that Gray belonged on the No-Fly List, why did they wait until after he had exercised his rights under the First Amendment to petition this Court before they placed his name on that list?

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2005 a true copy of Plaintiff's Reply Memorandum in Support of Motion For Preliminary Injunction was served, via hand delivery, upon Mark T. Quinlivan, Esq., Office of the United States Attorney, U.S. Courthouse, Suite 9200, 1 Courthouse Way, Boston, MA 02210.

_____
Hugh Dun Rappaport

2192\0001\155798.1

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELLE D. GREEN, et al.,

Plaintiffs,

v.

TRANSPORTATION SAFETY
ADMINISTRATION, et al.,

Defendants.

Case No. C04-763 Z

**DECLARATION OF
LEE S. LONGMIRE**

I, LEE S. LONGMIRE, do hereby declare as follows:

1. I am the Assistant Administrator for Operations Policy, Transportation Security Administration ("TSA"), Department of Homeland Security. I have held this position since March 2003. From November 2001 through March 2003, I was the Director of Aviation Policy for the Federal Aviation Administration ("FAA"), until this position was transferred to the TSA in March 2002. During the period from January 1980 through November 2001, I was employed by the FAA as a civil aviation security inspector, a Regional Civil Aviation Security Division Manager, Deputy Director and Director of Civil Aviation Security Operations, and as the Director of Civil Aviation Security Policy. As part of my official duties in my present position, I am responsible for the development, coordination and issuance of policies, directives, regulations and procedures to promote the protection of the civil aviation security system against acts of air piracy and other related criminal acts.

Declaration of Lee S. Longmire
Green v. TSA, CV 04-0763Z

U.S. Department of Justice
20 Massachusetts Ave., NW, Rm. 7300
Washington, D.C. 20530
Tel: (202) 514-4640  Fax: (202) 616-8470

2. The statements made within this Declaration are based upon my personal knowledge, information made available to me in my official capacity, and conclusions reached in accordance with such information. I make this Declaration in support of Defendants' motion to dismiss.

3. The TSA was created as an agency within the United States Department of Transportation ("DOT") by the Aviation and Transportation Security Act ("ATSA"), Pub. L. 107-71 (November 19, 2001). Under the ATSA, the Under Secretary of Transportation for Security, as head of the TSA, was made responsible for security in all modes of transportation, and assumed all the responsibilities previously exercised by the Administrator of the FAA for civil aviation security under Chapter 449 of Title 49. Following the enactment of the Homeland Security Act of 2002, the TSA, and all of its functions and personnel, were transferred, effective March 1, 2003, to the Department of Homeland Security ("DHS"). Within DHS, the Under Secretary of Transportation for Security underwent a title change to Administrator of the TSA.

4. As part of its statutory mandate with respect to aviation security, the TSA is required to provide for the screening for weapons, explosives, and other destructive substances of all passengers and property that will be carried aboard a passenger aircraft. The TSA also prescribes regulations to protect passengers and property on an aircraft against acts of criminal violence or aircraft piracy. To further these purposes, TSA's implementing regulations require each aircraft operator to adopt a security program which must be approved by the agency.

5. When the TSA determines that additional security measures (over and above those provided for in the approved security program) are necessary to respond to a specific threat against civil aviation, or a threat assessment, it issues a "Security Directive" to regulated aircraft operators. 49 C.F.R. § 1544.305(a). Similarly, in the case of a foreign air carrier, the TSA may issue an "Emergency Amendment" to the carrier's security program when it finds that there is an emergency requiring immediate action with respect to safety in air transportation or in air commerce. 49 C.F.R. § 1546.105(d). Compliance by air carriers with Security Directives and Emergency Amendments is mandatory. See 49 C.F.R. §§ 1544.305(a) and 1546.105(d).

6. The ATSA also requires that the TSA establish procedures for notifying airline

Declaration of Lee S. Longmire
Green v. TSA, CV 04-0763Z

-2-

U.S. Department of Justice
20 Massachusetts Ave., NW, Rm. 7300
Washington, D.C. 20530
Tel: (202) 514-4640 Fax: (202) 616-8470

security officers of the identity of individuals known to pose, or suspected of posing, a risk of air piracy or terrorism, or a threat to airline or passenger safety. If one of these individuals seeks to board an aircraft, the statute requires the airlines to notify appropriate law enforcement agencies, prevent the individual from boarding the aircraft, or take other appropriate action with respect to that individual.

7. The TSA has implemented these requirements by issuing a series of Security Directives to regulated aircraft operators and Emergency Amendments to foreign air carriers which I refer to collectively below as Security Directives. These Security Directives establish two groups of individuals who are identified on separate lists that are appended to the Security Directives based on an assessment of the degree of risk that they pose to aviation safety. The first group who are identified on a "No Fly List" consists of individuals who are prohibited from flying altogether. The second group who are identified on a "Selectee List" consists of individuals who must be "selected" by air carriers for additional screening before they are permitted to fly. The Security Directives also prescribe the procedures to be followed and the specific security measures to be taken by air carriers when individuals identified on the No Fly or Selectee lists seek to board an aircraft.

8. From time to time, the TSA revises both the procedures prescribed by these Security Directives and, as updated information becomes available, the specific individuals identified on the No Fly and Selectee Lists. These revisions are made by issuing new Security Directives which supersede those previously issued and by updating the information contained on the No Fly and Selectee Lists appended to the Security Directives.

9. In view of the sensitive nature of these Security Directives, I cannot describe them further on the public record without undermining the effectiveness of the procedures required and directly compromising the safety of the traveling public. Disclosure of the specific security procedures to be followed by air carriers when they encounter an individual identified on the No Fly and Selectee Lists could enable terrorists and other violent criminals to identify potential weaknesses in the current security system, and to circumvent or otherwise defeat the security measures mandated by the TSA in the Directives. Similarly, public disclosure of the identity of

Declaration of Lee S. Longmire
Green v. TSA, CV 04-0763Z

-3-

U.S. Department of Justice
20 Massachusetts Ave., NW, Rm. 7300
Washington, D.C. 20530
Tel: (202) 514-4640 Fax: (202) 616-8470

1  individuals on the No Fly and Selectee lists, or the specific criteria used to determine which
2  individuals should be included on the lists, would compromise the safety and security of
3  passengers by providing terrorists with information that may reveal which of their members have
4  been compromised, and which of their members may board an aircraft without any form of
5  enhanced scrutiny. For these reasons, TSA's regulations expressly prohibit the disclosure of the
6  contents of Security Directives and Emergency Amendments, as well as the selection criteria to
7  be used in screening airline passengers. See 69 Fed. Reg. 28066, 28083 (May 18, 2004)
8  (sections 1520.5(b)(1), (b)(2), and (b)(9)(i)).
9      Pursuant to 28 U.S.C. Section 1746, I declare, under penalty of perjury, that the foregoing
10 is true and correct.

12 Dated on the ___4th___ day of June 2004.

        LEE S. LONGMIRE
        Assistant Administrator,
        Office of Operations Policy
        Transportation Security Administration
        Department of Homeland Security

Declaration of Lee S. Longmire
Green v. TSA. CV 04-0763Z

-4-

U.S. Department of Justice
20 Massachusetts Ave., NW, Rm. 7300
Washington, D.C. 20530
Tel: (202) 514-4640  Fax: (202) 616-8470

**EXHIBIT B**


Home | FAQs | Sitemap | Contact Us

**Transportation Security Administration**


Threat Advisory Level

| Travelers & Consumers | Employment | Business Opportunities | Industry Partners | Law & Policy | Security & Law Enforcement | About TSA | Briefing Room |

Site Search | keyword

---

**ravelers & Consumers**

Air Travel

Passenger Rail

Passenger Vessels

Highway Travel

Mass Transit

TSA Partner Programs

Persons with Disabilities & Medical Conditions

TSA Customer Service
- TSA Contact Center
- TSA Claims Center

Signup for Homeland Security Alerts

Passenger Resources

Travel Tips

---

*Travelers & Consumers*

**TSA Customer Service**

Printable Version

**TSA Watch Lists Clearance Procedures**

The Transportation Security Administration (TSA) compiles Watch Lists based on recommendations and information received from Federal agencies, including intelligence and law enforcement agencies. We recognize that the implementation of the Watch Lists has occasionally led to frustrating delays at airports for individuals inadvertently impacted by the clearance procedures. We regret this inconvenience and have developed a clearance protocol that should provide a more efficient process for you during the flight check-in.

If you would like to participate, we ask that you complete the TSA Passenger Identity Verification Form (PDF 110 KB)  Please forward the completed Passenger Identity Verification Form (PIVF) with your original signature and the requested notarized/certified copies of records to the following address:

**Transportation Security Administration
TSA-901
601 South 12th Street
Arlington, VA  22202-4220**

TSA will be unable to process your request without the information requested on the PIVF. We will notify you in writing of our determination and will contact the appropriate parties, including the airlines, in an effort to streamline your check-in.

Please understand that the TSA clearance process will not remove a name from the Watch Lists. Instead this process distinguishes passengers from persons who are in fact on the Watch Lists by placing their names and identifying information in a cleared portion of the Lists. Airline personnel can then more quickly determine when implementing TSA-required identity verification procedures that these passengers are not the person of interest whose name is actually on the Watch Lists.

Clearance by TSA may not eliminate the need to go to the ticket counter in order to check-in. While TSA cannot ensure that this procedure will relieve all delays, we hope it will facilitate a more efficient check-in process for you. Additionally, TSA has issued guidance to the airlines to clarify further the Watch List clearance protocol.

TSA's clearance procedures apply only to persons affected by the Watch Lists. There are other reasons that a passenger may experience delays, such as random selection for additional screening, alarming at the security checkpoint, or as a result of increased security levels requiring additional screening. These types of delays may not happen every time and this process cannot grant relief from these occasional delays.

Downloadable TSA Passenger Identity Verification Form (PDF 110 KB)

## How the process works

Transportation Security Administration

Internet Privacy Policy : Terms of Use : Accessibility : FOIA : FirstGov

U.S. Department of Homeland Security